RCPt # 150003900

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,
an individual,

              Plaintiff,

v.

**TOBIAS & ASSOCIATES INC.**,
a Florida limited liability company,
doing business as **GETMEHEALTHCARE.COM**,
doing business as **ENROLLMENT CENTER**,

**FIDELITY LIFE ASSOCIATION**,
an Illinois corporation,

**GREAT WESTERN INSURANCE COMPANY**,
an Iowa corporation,

**MICHAEL CHARLES TOBIAS**,
an individual,

**ROBERT D. PHILLIPS JR.**,
an individual,
also known as **ROBERT D. MEEGAN**,
also known as **ROBERT D. OLIVERI**,

**JESSE ROBERT VENTURA**,
an individual,

              Defendants.

Case:5:23-cv-10331
Judge: Levy, Judith E.
MJ: Patti, Anthony P.
Filed: 02-08-2023 At 12:53 PM
CMP DOBRONSKI V. TOBIAS & ASSOCIATE
S ET AL (DA)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.,* and the Florida Telephone Solicitation Law ("FTSL"), Fla. Stat. § 501.059, *et seq*.

### Parties

2.  Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a place of business and residence in Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant TOBIAS & ASSOCIATES INC. ("T&A"), is a corporation organized and existing under the laws of the State of Florida, with a principal office being located at 123 Northwest 13th Street, Suite 101, Boca Raton, Florida 33432-1639.

4.  Upon further information and belief, T&A transacts business using the fictitious business names of GETMEHEALTH CARE.COM and ENROLLMENT CENTER.

2

5. Upon information and belief, Defendant FIDELITY LIFE ASSOCIATION ("Fidelity"), is a corporation organized and existing under the laws of the State of Illinois, with its principal office being located at 8700 West Bryn Mawr Avenue, Suite 900S, Chicago, Illinois 60631-3508, that is qualified to business and does business in the state of Michigan as an insurance company, and has a resident agent in the state of Michigan with a registered office located at 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170-4675.

6. Upon information and belief, Defendant GREAT WESTERN INSURANCE COMPANY ("Western") is a corporation organized and existing under the laws of the state of Iowa, with its principal office being located at 601 6th Avenue, Des Moines, Iowa 50309-1605, that is qualified to do business and does business in the state of Michigan as an insurance company, and has a resident agent in the state of Michigan with a registered office located at 2900 West Road, Suite 500, East Lansing, Michigan 48823-6386.

7. Upon information and belief, Defendant MICHAEL CHARLES TOBIAS ("Tobias") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 1320 Ocelot Road, Venice, Florida 34293-6674.

8. Upon information and belief, Defendant ROBERT D. PHILLIPS JR. ("Phillips") is an individual, of the age of majority, is mentally competent, is not in

3

the military service, and resides at 10775 Sunset Ridge Circle, Boynton Beach, Florida 33473-4867.

9. Upon further information and belief, Philips is also known as ROBERT D. OLIVERI and ROBERT D. MEEGAN.

10. Upon information and belief, Defendant JESSE ROBERT VENTURA ("Ventura") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 8329 Trent Court, Apartment D, Boca Raton, Florida 33433-8504.

## Jurisdiction

11. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

12. This Court has limited personal jurisdiction over Defendants T&A, Fidelity, and Western pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

13. In addition, Defendants Fidelity and Western are each licensed, pursuant to M.C.L. § 500.402, *et seq.*, by the Michigan Department of Insurance and Financial

4

Services ("MDIFS") to act as insurers and to transact insurance in the state of Michigan.

14.  This Court has limited personal jurisdiction over Defendants Tobias, Phillips, and Venura pursuant to M.C.L. § 600.705,  as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

15.  In addition, Defendants T&A, Tobias, Phillips, and Ventura each are licensed, pursuant to M.C.L. § 500.1201a, *et seq.*, by the MDIFS to act as insurance producers to sell, solicit, and negotiate insurance in the state of Michigan.

## Venue

16.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

17. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-

calls" by enacting the TCPA.

18.    According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

19. Congress explicitly found that robo-calling is an invasion of privacy.

20.    In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

21. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150

robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

22. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

23. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

24. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

25. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— ...

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is

exempted by rule or order by the Commission under paragraph (2)(B)...."

26. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

27. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

> "(a) No person or entity may: ...
>
> (3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;
>
> (i) Is made for emergency purposes;
>
> (ii) Is not made for a commercial purpose;
>
> (iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;
>
> (iv) Is made by or on behalf of a tax-exempt nonprofit organization; or
>
> (v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...
>
> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted

procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: ...

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges...."

28. The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

29. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

> "PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –
>
> (A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

30. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone solicitation to:...

10

> "(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

31.   Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

> "Private right of action.  A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C)  both such actions.
>
> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

11

32. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

> "(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following: ...
>
> (a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:
>
> (i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.
>
> (ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.
>
> (b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...
>
> (5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...
>
> (9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

33. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

> ". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

34.  The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made.

(2) The person answering the telephone number required under subsection (1) shall provide a residential telephone subscriber calling the telephone number with information describing the organization or other person on whose behalf the telephone solicitation was made to the residential telephone subscriber and describing the telephone solicitation.

(3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

35.  The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

"(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates

13

this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

36. The FTSL, at Fla. Stat. § 501.059, promulgates in relevant part as follows:

"(2) Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation...

(8)(a) A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

(b) It shall be unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone

14

number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone...

(10)(a) A called party who is aggrieved by a violation of this section may bring an action to:

1. Enjoin such violation.

2. Recover actual damages or $500, whichever is greater.

(b) If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a)...."

37.  Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged

drug trafficking and money laundering activities.

38. Plaintiff's residential telephone numbers are \*\*\*-1000, \*\*\*-1212, and \*\*\*-2424.

39. Plaintiff's residential telephone number \*\*\*-1000 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least May 27, 2022 and at all times subsequent thereto.

40. Plaintiff's residential telephone numbers \*\*\*-1212 and \*\*\*-2424 are each listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least June 29, 2003 and at all times subsequent thereto.

41. By listing his residential telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential and/or cellular telephone numbers.

42. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

43. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the

call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan.**" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

44. Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

45. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

46. At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

47. At no time has Plaintiff provided "prior express written consent" (as that terms is defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's

17

residential telephone number.

48.  At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with any of the Defendants.

49.  The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

50.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

51.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting

within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

52. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

53. It is well settled under both Michigan and Florida law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

54. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

55. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

56. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

57. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

58. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case,

20

initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

### Allegations Specific to this Complaint

59. Defendant T&A is in the business of distributing insurance products.

60. Defendant Tobias is the chief executive officer of T&A, personally authorized, directly, had control over, and participated in the activities of T&A, including its telemarketing activities complained of herein, and at all times had the the ability to cease such activities.

61. Defendants Phillips and Ventura (hereinafter the "Agents") are each either employees or authorized agents of T&A.

62. T&A uses a multi-level marketing scheme termed a "National Marketing Organization" ("NMO") that is well-established within the insurance industry.

63. Under this model, NMOs contract directly with insurance carriers, in this case Fidelity and Western (collectively, the "Insurance Companies") who then provide insurance products that are sold through the NMO.

64. The NMO then employs either employees or independent contractors, commonly known as "agents", who market and distribute the carrier's insurance products to consumers.

65.  As in a typical multi-level marketing scheme, agents can recruit other agents to become part of their selling organization at the NMO.  The selling organization above or beneath a particular agent is commonly referred to, respectively, as that agent's "upline" or "downline."

66.  An enrolled agent is eligible to earn commission's through the NMO's compensation plan for any insurance product that the agent sells, after the NMO first deducts its commission from the sale of the Insurance Companies' products.

67.  The enrolled agent also earns commissions on insurance products sold by the enrolled agent's "downline" agents.

68.  As part of its marketing program, T&A sells or provides telemarketing "leads" of consumers to its agents.

69.  In addition to telemarketing leads, T&A also provides its agents with access to automatic telephone dialing platforms and services to facilitate telephoning consumers *en masse* to market the T&A's Insurance Companies' products.

70. These automatic telephone dialing platforms can store lists of telephone numbers (and, often, personal information) of consumers and use a random number or sequential number generator which has the capacity to select and initiate calls to persons from the stored lists of telephone numbers with no human involvement and only route the call to a telemarketing agent when a called person has actually

answered the call.

71. T&A promotes telemarketing to its agents as being essential if the agents want to be successful in marketing T&A's Insurance Companies' products, and that the "high quality" leads and automatic telephone dialing platforms supplied by T&A will facilitate the agent being successful.

72. T&A, the Agents, and the Insurance Companies are well aware of the TCPA and its restrictions upon telemarketing.

73. T&A, its Agents, and its Insurance Companies are well aware that the automatic telephone dialing platforms and telemarketing activities which it directs its agents to utilize are illegal and violate the TCPA.

74. The call centers initiating the automated telemarketing calls on behalf of T&A are usually located outside the United States, typically in the Asian continent, and thus usually outside the reach of United States laws and law enforcement authorities.

75. The call centers, in turn, hire individuals to act as lead generators – known in telemarketing parlance as "ropers" – to pre-qualify called consumers as to whether the consumer meets the qualification criteria for specific insurance products.

76. The lead generator or "roper" will engage in deceptive and illegal techniques to solicit consumers, including, *inter alia*: manipulating the caller

identification such that the caller cannot be easily identified or called back; identifying with a false or generic-sounding business name; deliberately calling telephone numbers which appear on the National Do Not Call Registry; refusing to provide identifying information to the called party upon inquiry; uttering profanities to or otherwise threatening or harassing the called party if the consumer does not cooperate by expressing interest or providing requested personal information or the called party requests not to be called.

77.   Once a lead generator or "roper" has a consumer who meets the qualification criteria – referred to in telemarketing slang as the "mark" – the lead generator will then live transfer the call to an agent who will then attempt to close the sale of the insurance product to the consumer.  It is usually only late at this stage that a called party might learn any identifying information as to the source of the telephone call.

78.  When the lead generator or "roper" has a consumer who fails to meet the qualification criteria, the lead generator will immediately hang up without warning.

79.  T&A, its Agents, and the Insurance Companies all are well aware of the illegal tactics being used by their contracted call centers, but are deliberately indifferent to what is occurring so as to be able to engage in willful blindness and represent that they are "unaware" of the illegal telemarketing conduct.

80.  The Insurance Companies support and facilitate the scheme by, *inter alia*, providing the Agents: with access to the Insurance Companies' computer systems for pricing; the ability to enter data into the Insurance Companies' systems; and the authority to use the Insurance Companies' trade name and trademark or service mark.

81.  The Insurance Companies ratify the conduct by accepting the benefits (i.e., the applications for insurance) realized from the telemarketing activity.

82.  In the past 12 months alone, Plaintiff has received well over 500 telephone calls from telemarketers who have falsified or "spoofed" their caller identification and who have identify as being with "Senior Benefits", "American Benefits", "Medicare Benefits" or similar generic sounding names, and during which call where Plaintiff was unable to develop the true identify of the ultimately responsible seller.

83.  Because the telemarketers engage in such deceptive practices designed to conceal their actual identities, Plaintiff has had to engage in various investigative techniques to identify the sources of the telemarketing calls being received.

84.  One investigative technique utilized by Plaintiff is termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name.  If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

85. As discovery progresses in this case and Plaintiff is able to learn the identity or identities of the call centers that Defendants have utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the call centers as additional named defendants.

86. Also as discovery progresses in this case, Plaintiff anticipates learning of additional telephone solicitation calls for which Defendants or Defendants' agents are responsible, at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

The Calls

87. On the following twelve (12) dates and times, Defendants or Defendants' agents initiated calls to Plaintiff's residential telephone numbers, as indicated, using an artificial or pre-recorded voice message, without prior express consent, and there being no emergency, and displaying the caller identification number ("Caller ID") and caller identification name ("CLID Name") as shown.

| Date | Time | Called # | Caller ID | CLID Name |
|---|---|---|---|---|
| 04/20/2022 | 13:38 | ***-2424 | 734-416-7676 | V42013390801174 |
| 06/23/2022 | 17:24 | ***-1000 | 734-535-9320 | |
| 06/24/2022 | 11:22 | ***-1212 | 269-236-3252 | |
| 07/06/2022 | 12:22 | ***-1212 | 734-234-1206 | V70612221900000 |
| 07/29/2022 | 15:21 | ***-1212 | 734-420-1150 | PLYMOUTH MI |
| 08/18/2022 | 13:22 | ***-2424 | 734-423-4491 | WAYNE MI |
| 08/23/2022 | 12:45 | ***-1212 | 734-228-7976 | |
| 09/13/2022 | 17:54 | ***-1212 | 734-420-1922 | R TEMMERMAN |
| 10/05/2022 | 16:26 | ***-1000 | 734-921-0856 | |

| | | | |
|---|---|---|---|
| 10/25/2022 | 10:36 | ***-1000 | 734-871-6942 |
| 12/06/2022 | 15:39 | ***-1000 | 734-872-6926 |
| 02/02/2022 | 12:33 | ***-1000 | 734-872-6934 |

88.  On each of the twelve (12) occasions, *supra*, upon Plaintiff answering the telephone call by saying "hello," Plaintiff would then note silence for approximately 4-5 seconds and then hear a pre-recorded voice message which began:

> "Hello.  This is James.  I am with American Benefits on a recorded line.  How are you doing today? [Delay.] Great! I am calling to inform you about a new low cost final expense insurance plan that's going to cover a hundred percent of your final expenses."

89.   The pre-recorded voice message then engages the called party with an interactive voice response ("IVR") system which asks pre-qualifying questions of the consumer including, *inter alia*, age, beneficiary, and zip code.

90.  Callers who fail to meet the pre-qualification criteria are simply hung-up upon.

91. Called parties who meet the pre-qualification criteria are then automatically transferred to a "senior verifier" who verifies the prior IVR responses and then asks additional questions including, *inter alia*, name, date of birth, address, Social Security Number, and bank account information.

92. During the "verification" process, called parties who fail to meet pre-qualification criteria or who refuse to provide requested information are suddenly

hung-up upon so that the "senior verifier" can immediately move on to another held call.

93. For those consumers who pass the "verification" process, the call is then transferred to a licensed insurance agent who them will attempt to sell the called party a final expense life insurance policy.

94. On each of the twelve (12) calls listed in paragraph 85, *supra*, in order to attempt to better identify the source behind the automated pre-recorded messages, Plaintiff would engage in the pre-qualification and qualification process and utilize an investigative process known as a "canary trap" by providing controlled information, including a false name, etc.

95. During each of the calls, except the call on February 2, 2022, Plaintiff would get to various different steps of the process and then, suddenly, be hung up upon without warning and without having better identified the source of the call.

96. On each occasion, immediately after the termination of the call, Plaintiff would dial back the Caller ID telephone number displayed, and on each occasion the telephone number was either disconnected or, on one occasion, was a private telephone number of an individual whose number was apparently falsely "spoofed" by the caller.

97. During the course of the call on February 2, 2022, Plaintiff successfully

got past the IVR pre-qualification process, and the "verification" process with the "senior verifier", and was ultimately connected to a licensed insurance agent who identified himself as Jesse Ventura with "The Enrollment Center."

98. Ventura first solicited Plaintiff for a $10,000 life insurance policy with a premium of $104 per month issued by Fidelity.

99. Ventura then solicited Plaintiff for a $14,000 life insurance policy with a premium of $100 per month issued by Western.

100. As Ventura was asked for Plaintiff's bank account information, the call suddenly disconnected and Plaintiff received a recorded message which stated: "You have been kicked from this conference."

101. On February 2, 2023, at 12:44 P.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-1000.

102. Upon answering the call, Plaintiff was again speaking with Ventura.

103. Ventura stated that he did not know what happened, and resumed the telephone solicitation.

104. Ventura then requested, and Plaintiff provided Ventura, a *faux* name of Kevin McAllister, and provided, *inter alia*, a false date of birth and Social Security Number, mailing address, email address, and bank account information.

105. Ventura then sold Plaintiff a policy with Western.

29

106.  Plaintiff attempted to get Ventura to better identify his company, and Ventura repeatedly would identify by the generic name of "The Enrollment Center" and that they were located in Florida.

107.  Ventura briefly put Plaintiff on hold in order to connect Plaintiff to the "compliance department." During the brief hold, a recorded message stating: "I want to thank you for choosing GETMEHEALTHCARE.COM" played.

108.  Plaintiff was then transferred to an individual who identified himself as "Eric" with "GETMEHEALTHCARE.COM".

109.  "Eric" then verified the "canary trap" information which Plaintiff had provided to Ventura.

110.  Eric then stated that he was emailing an application to Plaintiff.

111.  On February 2, 2023, at 1:09 P.M., Plaintiff received an email from a email address belonging to Western, which email was signed by a Robert D. Phillips, which included an application for individual life insurance policy on a Western form which was pre-filled with the "canary trap" information which Plaintiff had provided minutes earlier to Ventura.

112.  The Western application includes a certification signature by Phillips that the answers on the form were recorded corrected.

113.  Upon inquiry, Eric explained that Phillips was his manager and that they

30

were located in Florida.

114. Plaintiff experienced problems getting the Western application form that had been received via email to fully open on his computer which Eric attributed to problems with the Adobe Reader software.

115. Eric then, instead, completed an application for Plaintiff to obtain life insurance from Fidelity.

116. Eric then went through a telephone verification process for the Fidelity application.

117. On February 2, 2023, at 1:19 P.M., Plaintiff received an email at the "canary trap" email address provided to Defendants from Fidelity which included a copy of a Fidelity application for life insurance which was pre-filled with the "canary trap" information which Plaintiff had provided to Defendants.

118. The Fidelity application included a electronic signature of Michael Charles Tobias as being the writing agent.

119. On February 2, 2023, at 1:25 P.M., Plaintiff received an email at the "canary trap" email address from Fidelity stated that the application had been "cancelled to edit application."

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

120. Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra.*

121.  Each of the twelve (12) calls were in violation of the TCPA and its implementing regulations, specifically 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(3), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party and there being no emergency.

122.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - ABANDONED CALL

123.  Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra.*

124.  Each of the twelve (12) calls were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(A), as the call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

125.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT III
## VIOLATION OF THE TCPA - NO OPT OUT

126.  Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra.*

127. Each of the twelve (12) calls were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i)(B), as the artificial or prerecorded voice message did not provide an automated interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call.

128. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - DO NOT CALL

129. Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra*.

130. Each of twelve (12) calls, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

131. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT V
## VIOLATION OF THE TCPA - FALSE IDENTITY

33

132. Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra*.

133. Each of the twelve (12) calls were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as Defendants or Defendants' agent entity making the call for telemarketing purposes did not provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

134. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VI**
**VIOLATION OF THE TCPA - FALSIFIED CALLER ID**

135. Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra*.

136. Each of the twelve (12) calls were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a  telephone number which would permit any individual to make a do-not-call request during regular business hours.

137. The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT VII
## VIOLATION OF THE MTCCCA

138. Plaintiff incorporates the allegations of paragraphs 1 through 119, supra.

139. Each of the twelve (12) calls were in violation of the of the MTCCCA, specifically M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT VIII
## VIOLATION OF THE MHSSA

140. Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra.*

141. Each of twelve (12) calls were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. 445.111b(1), as the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated; and/or M.C.L. 445.111b(3), as the telephone solicitor intentionally blocked or otherwise interfered with the caller identification function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the

telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

## COUNT IX
## VIOLATION OF THE FTSL

142. Plaintiff incorporates the allegations of paragraphs 1 through 119, *supra*.

143. Each of twelve (12) calls were in violation of the FTSL: specifically Fla. Stat. § 501.059(2), as Defendants or Defendants' agent made an unsolicited telephonic sales call to a residential telephone number and did not identify himself by his or her true first and last names and the business immediately upon making contact by telephone with the person who is the object of the telephone solicitation; and/or Fla. Stat. § 501.059(8)(a), Defendants or Defendants' agent made and allowed a telephonic sales call to be made involving the playing of a recorded message without the prior express written consent of the called party; and/or Fla. Stat. § 501.059(b), Defendants or Defendants' agent caused a telephonic sales call to be made to fail to transmit the originating telephone number and the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call.

### PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally,

as follows:

    A.    Damages:

        i.    Damages for violations of the TCPA alleged:

| Count | Violations |
|---|---|
| I | 12 |
| II | 12 |
| III | 12 |
| IV | 12 |
| V | 12 |
| VI | 12 |

A total of 72 violations at $500 per violation for damages of $36,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $108,000.00.

        ii.    Damages for violations of the MTCCCA alleged at Count VII: 12 violations at $1,000 per violation, for damages of $12,000.00.

        iii.    Damages for violations of the MHSSA alleged at Count VIII: 12 violations at $250 per violation, for damages of $3,000.00.

        iv.    Damages for violation of the FTSL alleged at

Count IX: 12 calls at $500 per call, for

damages of $6,000.00.

The cumulative total amount of damages claimed in this action is $129,000.00,and

in the event of default judgment is the sum certain damages amount that will be

sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the

filing and prosecution of this action;

C. An injunction enjoining Defendants from initiating any telephone calls to

Plaintiff's residential telephone and cellular telephone lines.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable,

prudent and proper under the circumstances.

Respectfully submitted,

Dated: February 6, 2023

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: Washtenaw, MI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

## DEFENDANTS

TOBIAS & ASSOCIATES, INC.; FIDELITY LIFE ASSOCIATION; GREAT WESTERN INSURANCE COMPANY; MICHAEL CHARLES TOBIAS; ROBERT D. PHILLIPS JR.; and JESSE ROBERT VENTURA

**(b)** County of Residence of First Listed Plaintiff    Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Palm Beach, FL
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Case:5:23-cv-10331
Judge: Levy, Judith E.
MJ: Patti, Anthony P.
Filed: 02-08-2023 At 12:53 PM
CMP DOBRONSKI V. TOBIAS & ASSOCIATE
S ET AL (DA)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV |
| | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g)) | [ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act |
| | **PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 USC 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 129,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE _____    DOCKET NUMBER _____

DATE
February 6, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ■ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.          Other than stated above, are there any pending or previously          ☐ Yes
            discontinued or dismissed companion cases in this or any other          ■ No
            court, including state court? (Companion cases are matters in which
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


Notes :

PRESS FIRMLY TO SEAL                    PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

**UNITED ST**
**POSTAL SEF**

UNITED STATES
POSTAL SERVICE ®       *Retail*

**P**   US POSTAGE PAID
      **$9.65**   Origin: 48130
                  02/06/23
                  2525100130-09

**PRIORITY MAIL®**

0 Lb  10.50 Oz
                  **RDC 22**

EXPECTED DELIVERY DAY: 02/07/23

                  **C052**

SHIP
TO:     231 W LAFAYETTE BLVD
      FL 5TH
      DETROIT MI 48226-2777

■ Expected delivery date specified
■ Domestic shipments include $10
■ USPS Tracking® service included
■ Limited international insurance.**
■ When used internationally, a cus

*Insurance does not cover certain items. Fo
Domestic Mail Manual at http://pe.usps.cor
** See International Mail Manual at http://pe

**USPS TRACKING® #**

9505 5123 0462 3037 9938 66

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

TO:

**FLAT RATE ENV**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSU**



PS00001000014

EP14F Ju
OD: 12 1/

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

67

Case: 5:23-cv-10331
Judge: Levy, Judith E.
MJ: Patti, Anthony P.
Filed: 02-08-2023 At 12:53 PM
CMP DOBRONSKI V. TOBIAS & ASSOCIATE
S. ET AL. (DA)